UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
CHADERICK G.,

                        Plaintiff,        <u>DECISION AND ORDER</u>
                                                          1:24-cv-00258-GRJ

      v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

      In April of 2021, Plaintiff Chaderick G.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application. Plaintiff, represented by Craig Edward Polhemus, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8).

      This case was referred to the undersigned on October 8, 2024. Presently pending are the parties' requests for Judgment on the Pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. For the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

following reasons, the Commissioner is granted judgment on the pleadings and this case is dismissed.

## I. BACKGROUND

### A. Administrative Proceedings

Plaintiff applied for benefits on April 1, 2021, alleging disability beginning October 1, 2019. (T at 225, 228).[2] Plaintiff's application was denied initially and on reconsideration. He requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on November 10, 2022, before ALJ Michael Stacchini. (T at 37-73). Plaintiff appeared with an attorney and testified. (T at 45-69). The ALJ also received testimony from a vocational expert. (T at 69-71).

### B. ALJ's Decision

On November 18, 2022, the ALJ issued a decision denying the application for benefits. (T at 7-30). The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2019 (the alleged onset date) and meets the insured status requirements of the Social Security Act through December 31, 2025 (the date last insured). (T at 12).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 9.

The ALJ concluded that Plaintiff's coronary artery disease, hypertension, depression, anxiety, and posttraumatic stress disorder are severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitations: he can occasionally climb ramps and stairs, but cannot climb ropes or scaffolds; he must avoid extreme cold, heat, humidity, unprotected heights, and hazardous machinery; and he is limited to work that requires understanding, remembering, and carrying out simple, routine tasks with regular breaks at 2-hour intervals. (T at 15-16).

The ALJ concluded that Plaintiff could not perform his past relevant work as a police officer. (T at 24). However, considering Plaintiff's age (40 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between October 1, 2019 (the alleged onset date) and November 18, 2022 (the date of the ALJ's decision). (T at 25).

On November 29, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

C.  Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on January 12, 2024. (Docket No. 1).  On April 18, 2024, Plaintiff filed a brief requesting judgment on the pleadings. (Docket No. 11). The Commissioner interposed a brief requesting judgment on the pleadings on June 17, 2024. (Docket No. 14).  On June 28, 2024, Plaintiff submitted a reply brief. (Docket No. 15).

## II.  APPLICABLE LAW

A.  Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B. *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises three main arguments in support of his request for reversal of the ALJ's decision, all of which concern the ALJ's step five determination.  This Court will address each argument in turn.

At step five of the sequential analysis, the Commissioner determines whether the claimant can perform work that exists in significant numbers in the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy. (T at 24-25). In reaching this conclusion, the ALJ relied on the vocational expert's testimony that a hypothetical claimant with Plaintiff's RFC could perform the representative occupations of marker, assembler, and mail clerk, all of which (according to the expert) exist in significant numbers in the national economy. (T at 25, 69-71).

A. *Representative Occupations*

1. *Marker*

Plaintiff argues that the job of "marker" is obsolete and, thus, the ALJ's conclusion that he retained the RFC to perform this position cannot support the denial of benefits at step five.

In support of this argument, Plaintiff cites a case in which the court, in a footnote, commented that "[w]hile not a basis for remand," two of the representative occupations identified by the vocational expert – photocopy operator and retail price marker – appeared to be obsolete. *Applefeld v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-17-517, 2018 WL 1136571, at *5, n. 1 (D. Md. Mar. 1, 2018).

Other courts, including the Second Circuit in an unpublished decision, have declined to make a judicial finding as to whether an occupation is

8

obsolete and have concluded that the ALJ is entitled to rely on the vocational expert's testimony. *See Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011)("We decline Bavaro's invitation to take judicial notice of the decline of the photofinishing industry and deem the position infeasible for her. A vocational expert testified to the existence of such jobs at the national and regional level. The ALJ was entitled to credit that testimony … and we will not disturb that finding based upon Bavaro's conclusory proclamations to the contrary."); *see also Angi W. v. Comm'r of Soc. Sec.*, No. 21 Civ. 0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22, 2023) ("[T]he Court would be loath to conduct its own analysis of job types and job availability and second guess the vocational expert's conclusions.").

Notably, Plaintiff was represented by counsel during the administrative hearing. Counsel had no objection to the vocational expert's qualifications (T at 69) and declined the opportunity to cross-examine the expert. (T at 71-72). This would have been an appropriate time for counsel to ask the expert whether the marker position is obsolete. *See generally Holt v. Colvin*, No. 3:16-CV-01971 (VLB), 2018 WL 1293095, at *10 (D. Conn. Mar. 13, 2018)("Cross-examination of the vocational expert provides the plaintiff with the opportunity to challenge a vocational expert's

qualifications as well as the statistics or methodologies upon which the vocational expert relies, and it behooves counsel to make these challenges in order to preserve them on appeal."); *Cutillo v. Comm'r of Soc. Sec.*, No. 517CV0609MADWBC, 2018 WL 4635704, at *11 (N.D.N.Y. May 4, 2018).

In any event, the Court need not resolve the issue, as the vocational expert identified two other occupations (assembler and mail clerk) that are not alleged to be obsolete.

Consequently, any arguable error as to the continued viability of the marker position is harmless. *See Bavaro*, 423 F. App'x at 384 ("The Commissioner need show only one job existing in the national economy that Bavaro can perform."); *Angi W. v. Comm'r of Soc. Sec.*, No. 21-CV-0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22, 2023)("[A]lthough vocational experts customarily offer three jobs that a claimant perform as part of their testimony, the ALJ does not have a corresponding duty to find that each of the three jobs offer significant numbers of jobs in the national economy: one occupation is sufficient."); *Crespo v. O'Malley*, No. 22 CIV. 954 (SLC), 2024 WL 1255431, at *8 (S.D.N.Y. Mar. 25, 2024).

## 2. Assembler

Plaintiff also argues that the ALJ erred by failing to resolve a conflict between the vocational expert's testimony and the description of the assembler position set forth in the *Dictionary of Occupational Titles* ("DOT").

The Social Security Administration has taken administrative notice of the DOT, which was published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs. *See* 20 CFR § 416.966 (d)(1). When a vocational expert testifies regarding job requirements, the ALJ has "an affirmative responsibility to ask about any possible conflict between that [testimony] and information provided in the DOT …."  SSR 00-4p.

If there appears to be a conflict between the DOT and the vocational expert's testimony, the DOT is "so valued" that the ALJ is obliged to obtain a "reasonable explanation" for the conflict. *Brault v. SSA*, 683 F.3d 443, 446 (2d Cir. 2012)(citing SSR 004-p); *see also Lockwood v. Comm'r of SSA,* 914 F.3d 87, 91 (2d Cir. 2019).

SSR 004-p provides that the Commissioner will "rely *primarily* on the DOT … for information about the requirements of work in the national economy." SSR 004-p (emphasis added).  However, neither the DOT nor

the vocational expert's testimony "automatically 'trumps' when there is a conflict;" rather, the ALJ "must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the … testimony rather than on the DOT information." *Id*.

Here, as Plaintiff asserts, the assembler position has been assigned a "Temperament rating" of "R," which indicates that it requires "performing repetitive work, or performing continuously the same work, according to set procedures, sequence, or pace." Plaintiff contends that the temperament rating is part of the DOT and that the ALJ erred by failing to reconcile a conflict between the temperament demands of the assembler position, as described by the DOT, and the conclusion that a claimant (such as Plaintiff) with moderate impairment in his ability to sustain concentration, persistence, and pace could perform the work.

The problem with Plaintiff's argument is that the Temperament ratings are found in the 1991 *Revised Handbook for Analyzing Jobs* ("RHAJ"), which is a publication distinct from the DOT.

Courts have consistently concluded that the ALJ does not have a duty to resolve arguable conflicts with the RHAJ. *See, e.g., Gaspard v. Soc. Sec. Admin. Com'r,* 609 F. Supp. 2d 607, 616 (E.D. Tex. 2009)("[I]n

absence of proof that the Commissioner takes administrative notice of RHAJ information, or otherwise embraces it as authoritative, the court cannot connect the dots in such a way as to conclude that a RHAJ-based conflict runs afoul of either circuit law or Soc. Sec. R. 00–4p which require certain actions when a conflict exists with the DOT."); *Tait v. Comm'r of Soc. Sec.*, No. 13-CV-12667, 2014 WL 4187942, at *24 (E.D. Mich. Aug. 22, 2014); *James H. v. Comm'r of Soc. Sec.*, No. 321CV00252CRSCHL, 2022 WL 7232313, at *9 (W.D. Ky. Aug. 15, 2022); *Brabant v. Colvin*, No. EDCV 13-00323 AN, 2013 WL 6442666, at *1 (C.D. Cal. Dec. 6, 2013).

Moreover, the ALJ accounted for Plaintiff's impaired concentration, persistence, and pace by limiting him to work requiring no more than simple, routine, and repetitive tasks; simple work-related decisions; and no more than occasional workplace changes. (T at 22). The vocational expert testified that a hypothetical claimant with these limitations could perform the assembler job. (T at 70-71). The ALJ also confirmed that the vocational expert believed her testimony was consistent with the DOT. (T at 71). The ALJ thus satisfied his duty to inquire and resolve potential conflicts.

It is well-settled that an ALJ can appropriately account for moderate mental impairments, including limitations with respect to concentration, persistence, and pace through an RFC containing non-exertional limitations

13

like those found by the ALJ here. *See Duffy v. Comm'r of Soc. Sec.,* No. 17CV3560GHWRWL, 2018 WL 4376414, at *18 (S.D.N.Y. Aug. 24, 2018), *report and recommendation adopted,* No. 1:17-CV-3560-GHW, 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018)("Mild or moderate limitations in concentration do not necessarily establish that a claimant is disabled, particularly where the ALJ limits the scope of work to unskilled, repetitive work.")(collecting cases); *see also Campos v. Saul*, No. 18CV9809 (DF), 2020 WL 1285113, at *23 (S.D.N.Y. Mar. 18, 2020); *Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *13 (D. Conn. Oct. 19, 2020).

For these reasons the Court finds no error as to this aspect of the ALJ's step five determination.

### 3. Mail Clerk

Plaintiff argues that the ALJ erred by relying on the vocational expert's testimony that a hypothetical claimant with Plaintiff's RFC could perform the position of mail clerk.

Plaintiff asserts that the DOT description of the mail clerk position provides that it requires reasoning inconsistent with an RFC that limits him to simple, routine tasks. *See Gibbons v. Comm'r of Soc. Sec.*, No. 22-2730, 2023 WL 3830774, at *2 (2d Cir. June 6, 2023)("We conclude the ALJ here failed to meet its affirmative obligation to probe into an apparent conflict

between the reasoning level required in the Dictionary and the vocational expert's testimony.").

The Commissioner does not defend this aspect of the ALJ's decision. (Docket No. 14, at p. 20). Even if the Court accepted this as a concession of error, the error is harmless because the ALJ identified one representative occupation (assembler) that Plaintiff can perform. As noted above, one occupation is sufficient to satisfy the Commissioner's step five burden. *See Bavaro*, 423 F. App'x at 384; *Angi W.*, 2023 WL 2595008, at *11.

### B. Hypothetical Question

"In questioning a vocational expert, a hypothetical must precisely and comprehensively set out every physical and mental impairment of the Plaintiff that the ALJ accepts as true and significant." *Riley v. Astrue*, No. 11-CV-6512T, 2012 WL 5420451, at *8 (W.D.N.Y. Nov. 6, 2012).

"If hypothetical questions do not include all of a claimant's impairments, limitations and restrictions, or are otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion that the claimant is not disabled." *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12-cv-1631 (MAD), 2014 WL 420465, at *10 (N.D.N.Y. Feb. 4, 2014).

Stated succinctly – "[t]he RFC findings contained in the decision must match the hypothetical posed to the expert." *Owens v. Astrue*, No. 5:06-CV-0736 (NAM/GHL), 2009 WL 3698418, at *8 (N.D.N.Y. Nov. 3, 2009).

In the present case, the ALJ asked the vocational expert about a hypothetical claimant who was, *inter alia*, required to avoid "unprotected heights and hazardous machinery, *while restrained* …." (T at 70)(emphasis added). Plaintiff argues that this hypothetical is inconsistent with the RFC determination, which precludes Plaintiff from any work involving unprotected heights and/or hazardous machinery. (T at 15-16).

Plaintiff's argument is unavailing for the following reason.

First, the ALJ clarified the hypothetical in the following exchange with the vocational expert:

> Q: I had, in the hypothetical I had the limitation of avoiding unprotected heights and hazardous machinery, correct?
>
> A: That's correct, Your Honor.

(T at 71).

As such, although the original hypothetical did not precisely correspond with the RFC, the ALJ subsequently asked about the need to avoid unprotected heights and hazardous machinery without qualification, and the vocational expert did not change her testimony.

16

Second, Plaintiff cites no evidence to support a claim that the assembler position requires exposure to unprotected heights and/or hazardous machinery. Indeed, the DOT description of the position provides that it does not involve either. *See* DOT No. 729-687-010, 1991 WL 679733 (1991). The Court, therefore, finds no reversible error as to this aspect of the ALJ's decision.

### C. Significant Numbers

As discussed above, at step five, the Commissioner bears the burden of establishing that the claimant retains the RFC to perform work that exists in "significant numbers" in the national economy.

The Social Security Act and Commissioner's regulations do not "provide a definition for a 'significant' number of jobs." *Koutrakos v. Colvin*, No. 3:13-CV-1290 (JGM), 2015 WL 1190100, at *21 (D. Conn. Mar. 16, 2015). Courts have held that the "significant number" threshold is "fairly minimal," and they are "generally guided by numbers that have been found 'significant' in other cases." *See Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-30 (N.D.N.Y. 2015)(collecting cases).

While there is authority to suggest that 4,000-5,000 jobs are not a significant number, *see id.*, a total number over 17,000 is considered sufficient to satisfy the Commissioner's step five burden. *See Mota v.*

17

*Comm'r of Soc. Sec.*, No. 20-CV-07294 (SN), 2022 WL 464098, at *12 (S.D.N.Y. Feb. 15, 2022)(9,600 jobs is a significant number); *Hanson v. Comm'r of Soc. Sec.*, No. 15-CV-150 (GTS) (WBS), 2016 WL 3960486, at *13 (N.D.N.Y. June 29, 2016) (finding that national numbers from 9,000 and up was "significant"), *adopted by Hanson v. Colvin*, 2016 WL 3951150 (N.D.N.Y. July 20, 2016); *Gray v. Colvin*, No. 12-CV-6485L, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014)(16,000 jobs is significant).

Here, the ALJ relied on the vocational expert's testimony that a hypothetical claimant with Plaintiff's RFC could perform, *inter alia*, the assembler position. (T at 70). The vocational expert testified that there are 50,000 assembler positions available in the national economy. (T at 70).

Plaintiff argues that the ALJ had a duty to ask the vocational expert to identify the source of her opinion regarding the number of assembler positions available. The Court disagrees.

It is well-settled that the ALJ is entitled to rely on the vocational expert's testimony regarding job availability numbers where that testimony is "given on the basis of the expert's professional experience and clinical judgment" and is "not undermined by any evidence in the record." *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014); *see also Brault,* 683 F.3d at 450-51.

Further, there is no reversible error where, as here, (a) the vocational expert's qualifications are undisputed, (b) claimant's counsel raised no objection to the expert's testimony and declined the opportunity for cross-examination, and (c) there is no evidence or argument to show that the expert erred in assessing the number of available positions. *See Inoa v. Berryhill*, No. 18-CV-163 (JPO), 2019 WL 1407487, at *6 (S.D.N.Y. Mar. 28, 2019).

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's denial of benefits is supported by substantial evidence and consistent with applicable law and must therefore be sustained. The Commissioner is, therefore, GRANTED judgment on the pleadings, and this case is DISMISSED.

Dated: November 13, 2024                     */s/ Gary R. Jones*
                                             GARY R. JONES
                                             United States Magistrate Judge